AMERICAN GRAIN SEPARATOR CO. et al. v. TWIN CITY
SEPARATOR CO.

(Circuit Court of Appeals, Eighth Circuit.    December 3, 1912.)

No. 3,760.

*(Syllabus by the Court.)*

1. APPEAL AND ERROR (§ 100*)—DECISIONS REVIEWABLE—ORDERS REGARDING INJUNCTIONS.

An interlocutory order refusing to dissolve an injunction is appealable under section 129 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1134 [U. S. Comp. St. Supp. 1911, p. 194]), although the hearing on which it is founded is in effect a rehearing of the motion to grant the injunction, because the Congress did not except orders refusing to dissolve injunctions founded on rehearings of the motions to grant them from its general grant of the right of appeal from orders refusing to dissolve injunctions, and, where the legislative body has made no exception from a general grant or rule, it is not the province of the courts to do so.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 670–680; Dec. Dig. § 100.*]

2. APPEAL AND ERROR (§ 100*)—"HEARING IN EQUITY."

The usual meaning of the term "hearing in equity" is the trial of the suit including the introduction of the evidence, the argument of counsel, and the decree of the court.

But under section 129 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1134 [U. S. Comp. St. Supp. 1911, p. 194]), wherein an appeal is allowed from an order granting or refusing to dissolve an injunction "upon a hearing in equity," that term means the presentation and submission for decision of the motion for the order including the introduction of the evidence, the arguments of counsel, the other proceedings at that time upon which the order is based, and the order itself.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 670–680; Dec. Dig. § 100.*]

3. APPEAL AND ERROR (§ 954*)—INJUNCTION (§§ 135, 161*)—INTERLOCUTORY INJUNCTION—DISCRETION OF COURT.

The granting or dissolution of an interlocutory injunction is intrusted to the discretion of the court of original jurisdiction, not to the discretion of the appellate court.

In the absence of a violation of the principles and rules of equity established for the guidance of the court of original jurisdiction, the action of that court in these interlocutory matters must be sustained, unless there is clear proof of an abuse of its discretion.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3818–3821; Dec. Dig. § 954;* Injunction, Cent. Dig. §§ 304, 347; Dec. Dig. §§ 135, 161.*]

4. PATENTS (§ 308*)—INTERLOCUTORY INJUNCTION—LACHES.

The failure for three months of a complainant to prepare and press its suit for infringement of patents to a final hearing is not such laches as will deprive it of its right to the continuance of a temporary injunction to which it is otherwise entitled.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 504–506; Dec. Dig. § 308.*]

5. PATENTS (§ 308*)—INTERLOCUTORY INJUNCTION—DISCRETION OF COURT.

Where there has been a prior adjudication on full proof in a suit against other parties, of the validity of complainant's patents, and of

---

their infringement, where it is not clear that the defendants do not infringe, the evidence upon that subject is conflicting, and upon consideration thereof the chancellor is of the opinion that they do infringe, the granting or the refusal to dissolve an interlocutory injunction until the final hearing is not an abuse of the discretion of the chancellor.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 504–506; Dec. Dig. § 308.*]

6. PATENTS (§ 324*)—INTERLOCUTORY INJUNCTION—APPEAL—RESERVING DECISION.

Where questions of fact, or of mixed law and fact, are presented to the appellate court on an appeal from an interlocutory order regarding an injunction made upon conflicting testimony after a prior adjudication in a suit against others of the validity of the patents in suit and of their infringement, the court will not consider and determine the questions of fact, but will reserve their decision until after the final hearing of the issues below.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 600–606; Dec. Dig. § 324.*

Review of interlocutory decree granting or continuing injunction in Circuit Court of Appeals, see notes to Consolidated Piedmont Cable Co. v. Pacific Cable Ry. Co., 3 C. C. A. 572; Southern Pac. Co. v. Earl, 27 C. C. A. 189; United States Freehold Land & Immigration Co. v. Gallegos, 32 C. C. A. 484.]

Appeal from the District Court of the United States for the District of Minnesota; Charles A. Willard, Judge.

Bill in equity by the Twin City Separator Company against the American Grain Separator Company and another. From an order refusing to dissolve an interlocutory injunction, defendants appeal. Affirmed.

A. C. Paul, of Minneapolis, Minn., for appellants.

James F. Williamson, of Minneapolis, Minn., for appellee.

Before SANBORN and HOOK, Circuit Judges.

SANBORN, Circuit Judge. This is an appeal from an order refusing to dissolve an interlocutory injunction against the infringement by the American Grain Separator Company and Robert J. Owens of the first claim of letters patent No. 668,175, issued February 19, 1901, to Anton S. Froslid, and the three claims of letters patent No. 684,751 issued to him on October 15, 1901, for improvements in grain separators.

These patents were adjudged valid by the court below, and that adjudication was sustained by this court in J. L. Owens Co. v. Twin City Separator Co., in February, 1909, 168 Fed. 259, 271, 93 C. C. A. 561, 573. Reference to the opinion in that case is made for a description of the state of the art, of the principle and operation of Froslid's inventions, and of the device of the defendant in that case which was held to be an infringement of the four claims of Froslid's patents upon which this suit is founded.

When that suit was brought, the defendant Robert J. Owens was a stockholder in and the superintendent of the infringer, the J. L. Owens Company, and he was a witness in that case. He subsequently sold his

stock in that company, and after the decision of this court in the case against that company he organized the defendant in this case, the American Grain Separator Company, a corporation, in which he holds a majority of the stock, and the defendants have since manufactured two kinds and ask to manufacture another kind of fanning mill called, respectively, the "Winner No. 1," "Winner No. 2," and "Winner No. 3," all of which the complainant insists infringe the patented claims in suit. In their Winner No. 1 they substitute for the long flexible slotted riding aprons between the sieves which the Owens Company had used, and which the court below and this court held, constituted infringements of the claims in suit (168 Fed. 266, 93 C. C. A. 561), riding aprons made of thin slats of wood an inch and a half wide and three-sixteenths of an inch apart, held together by leathern straps fastened to the cross centers of the slats which were placed diagonally across the sieves on which they respectively rode and slanted in an opposite direction from the slats in the riding apron above and from those in the riding apron below that in which they were respectively located. The complainant asserted that these riding aprons in the defendants' fanning mills appropriated the principle and, by the same mode of operation, performed the functions of Froslid's patented inventions by mechanical means equivalent to those described in his patent, and after the defendants had made and sold some of their mills the complainant exhibited its bill and prayed for an injunction and for other relief. Upon a hearing upon the bill, affidavits and counter affidavits, and arguments of counsel, the issue of the infringement of the claims in suit by the Winner No. 1 was presented to, considered, and decided against the defendants, and the court below on October 23, 1911, issued its injunction against the manufacture and sale of that machine and against the infringement by the defendants in any other way of the claims in suit. Thereupon the defendants made their Winner No. 2, which differs from Winner No. 1 in that the wooden slats are $^{21}/_{16}$ of an inch wide, and the spaces between them are $^{5}/_{16}$ of an inch in width, the slats are connected by rigid wooden strips and anchored to the stationary part of the mill by rigid metal strips. After the defendants had made and sold some of these mills, the complainant cited them for contempt of court for violating the injunction, and on March 1, 1912, after a hearing, at which affidavits and counter affidavits were presented, which occupy more than 40 printed pages of the record, the court below held that the Winner No. 2 was an infringement of the complainant's patents and fined the American Company $500, which it paid on March 9, 1912. The defendants then devised a plan of the structure called "Winner No. 3," made a drawing thereof, and moved the court for permission to ship its fanning mills furnished with the rider aprons described in this drawing for the period of 30 days, and for a modification of its opinion on the question of the contempt. In the proposed Winner No. 3 the riding aprons differed from those in the Winner No. 1 and the Winner No. 2 in that the slats were to be thicker, heavier, and triangular in cross-section, were to be connected by stiff wooden strips nailed to the bottoms of the slats, the tops of the slats were to incline toward the heads of the sieves, and the apron was to be an-

chored by stiff metal strips. The court denied the motion. Thereupon on March 9, 1912, the defendants made a motion to dissolve the injunction (a) as to Winner No. 1, (b) as to Winner No. 2, and (c) as to Winner No. 3. The hearing on this motion was postponed until March 15, 1912. Additional affidavits and counter affidavits and all the affidavits and evidence theretofore offered in the case were introduced in evidence, and the court, after a full hearing of both parties upon the motion, denied it and refused to pass upon the question whether or not the proposed Winner No. 3 would be an infringement of the complainant's patents. It is from this order refusing to dissolve the injunction of October 23, 1911, that this appeal was taken.

At the threshold of this case the court is met by a motion to dismiss the appeal as to each of the three machines specified in the motion to dissolve: (1) For specific reasons applicable to each of these machines separately; (2) because the hearing upon the motion to dissolve was nothing but a rehearing of the motion for the injunction; and (3) because the order refusing to dissolve the injunction was not made upon a hearing in equity. The reasons for the dismissal of the appeal which are limited to one of the three machines are not material on this motion to dismiss and may be disregarded, because, if any part of the order refusing to dissolve the injunction is appealable, the motion cannot be sustained.

[1] There is force in the argument that the hearing on the motion to dissolve is only a rehearing of the motion for an injunction, and an order denying a rehearing is not appealable. But there is no exception in the statute of orders refusing to dissolve injunctions which rest on mere rehearings of motions to grant them from the general declaration of the Congress that:

. "Where, upon a hearing in equity in a District Court, or by a judge thereof in vacation, * * * an application to dissolve an injunction shall be refused, * * * an appeal may be taken from such interlocutory order or decree * * * refusing to dissolve an injunction." 36 Stat. c. 231, § 129, p. 1134.

And the fact that Congress made no such exception raises a conclusive legal presumption that it intended to make none, and it is not the province of the courts to do so. Omaha Water Co. v. City of Omaha, 147 Fed. 1, 77 C. C. A. 267, 12 L. R. A. (N. S.) 736, 8 Ann. Cas. 614; Madden v. Lancaster County, 12 C. C. A. 566, 572, 65 Fed. 188, 194; Cella Commission Co. v. Bohlinger, 147 Fed. 419, 425, 78 C. C. A. 467, 473, 8 L. R. A. (N. S.) 537; Wrightman v. Boone County, 31 C. C. A. 570, 572, 88 Fed. 435, 437; Union Central Life Ins. Co. v. Champlin, 116 Fed. 858, 860, 54 C. C. A. 208, 210.

[2] The ordinary meaning of the term "hearing in equity" is the trial of the case, including the introduction of the evidence, the argument of counsel, and the decree of the court. But even a cursory reading of the section of the statute under consideration leaves no doubt that this was not the sense in which that term was there used, because the act grants an appeal from an interlocutory order upon such a hearing, and interlocutory orders are generally made before the trial of a suit in equity. It leaves no doubt that the term here means the presentation

and submission for decision of the motion for the interlocutory order, including the introduction of evidence, the arguments of counsel, the other proceedings at that time upon which the order is based and the order itself. Root v. Mills, 168 Fed. 688, 689, 94 C. C. A. 174, 175; Taylor v. Breese, 163 Fed. 678, 684, 90 C. C. A. 558, 564. The order refusing to dissolve the injunction was made upon such a hearing, no sound reason for the dismissal of the appeal from it is perceived, and the motion to dismiss it is denied.

[3] The granting or dissolution of an interlocutory injunction rests in the sound judicial discretion of the court of original jurisdiction, and, where that court has not departed from the rules and principles of equity established for its guidance, its orders in this regard may not be reversed by the appellate court without clear proof that it abused its discretion. The question is not whether or not the appellate court would have made or would make the order. It is to the discretion of the trial court, not to that of the appellate court, that the law has intrusted the power to grant or dissolve such an injunction, and the question here is: Does the proof clearly establish an abuse of that discretion by the court below? Fireball Gas Tank & Illuminating Co. v. Commercial Acetylene Co. (C. C. A.) 198 Fed. 650, 653; Massie v. Buck, 128 Fed. 27, 31, 62 C. C. A. 535, 539; Love v. Atchison, T. & S. F. Ry. Co., 185 Fed. 321, 330, 107 C. C. A. 403; High on Injunctions (4th Ed.) § 1696; Higginson v. Chicago, B. & Q. R. R. Co., 102 Fed. 197, 199, 42 C. C. A. 254, 256; Interurban Ry. & Terminal Co. v. Westinghouse E. & Mfg. Co., 186 Fed. 166, 170, 108 C. C. A. 298, 302; Kerr v. City of New Orleans, 61 C. C. A. 450, 454, 126 Fed. 920, 924; Thompson v. Nelson, 18 C. C. A. 137, 138, 71 Fed. 339, 340; Societe Anonyme Du Filtre Chamberland Sys. Pasteur v. Allen, 33 C. C. A. 282, 285, 90 Fed. 815, 818; Murray v. Bender, 48 C. C. A. 555, 559, 109 Fed. 585, 589; U. S. Gramophone Co. v. Seaman, 51 C. C. A. 419, 423, 113 Fed. 745, 749.

[4] The validity of the patents in suit has been adjudged, and there are but two arguments in support of the contention that this record proves that the refusal to dissolve the injunction was an abuse of the discretion of the district court. They are that the complainant's laches in that it took no steps to prepare the case for final hearing between the rule day in January, 1912, and March 15, 1912, when the dissolution of the injunction was refused, and the failure of the court to find on the motion to dissolve that the appellants' mills did not infringe the claims in suit, evidence an abuse of the discretion of that court. It goes without saying that the failure of a complainant for three or four months to prepare and press a suit on its patent to final hearing constitutes no such laches as will deprive it of an equitable right to the continuance of an injunction against infringement to which it is otherwise entitled.

[5] Counsel for the complainant argues that the question of infringement presents an issue of law, and that the erroneous decision of such an issue necessarily implies an abuse of discretion. He contends that the construction and modes of operation of the appellants' mills are so clearly shown by the affidavits and by the mills themselves, some of which were produced and operated before the court below and before

this court, that it was a clear abuse of discretion for that court to hold that any of them infringed any of the claims which lie at the foundation of this suit. But the parties to this suit introduced in evidence the affidavit of a learned witness that these mills infringed these claims and the affidavit of another learned witness that they did not. Each of these witnesses explained at length the construction, mode of operation, and effect of the new riding aprons of the defendants; but their testimony relative to these modes of operation, the effect thereof, and the similarity thereof to the modes of operation and effect of the patented aprons was diametrically opposed. Affidavits of 10 other witnesses and still other evidence relating to this issue of infringement was presented to and considered by the court below until the affidavits alone cover more than 100 printed pages of the record, and all the affidavits and proceedings in evidence before the chancellor when he decided this motion to dissolve make a record of more than 400 printed pages. Upon this issue of infringement the affidavits were conflicting, and the court adhered to its earlier decisions when it issued its injunction and when it adjudged the American Company guilty of contempt. An examination of the evidence before him, of the defendants' two mills, and of their plan for a third, has convinced that the question of infringement decided by the trial court upon this mass of evidence was not a question of law, but was a question of fact, or a mixed question of law and fact, in which the issue of fact, the issue of the similarity of the principle and mode of operation of the defendants' and the plaintiff's rider aprons, was preponderant. In the decision of this issue no violation or disregard of any of the rules or principles of equity jurisprudence established for the guidance of the court below has been found. Nor does the record and the exhibition of the defendants' machines and their operation with which this court has been favored satisfy that the conclusion of the court below to adhere to its earlier decisions that they infringe the complainant's monopoly, and to let the injunction stand until the final hearing, evidence any abuse of its judicial discretion. That injunction had been granted more than four months before the motion to dissolve was presented on the condition that the complainant should give a bond in the sum of $5,000 to pay any damages which the defendants might sustain therefrom. The defendants had taken no appeal from that order. The complainant had given the bond, the validity of the claims of the patent had been adjudicated, the evidence on the question of infringement was voluminous, and it was not clear upon that evidence and an examination of the defendants' machines and their operation that they did not infringe. Where there has been a prior adjudication on full proof in a suit against other parties sustaining the claims of a patent and a claim of infringement thereof, where it is not clear that the defendants do not infringe, the evidence upon that subject is conflicting, and upon consideration thereof the chancellor is of the opinion that they do infringe, the granting of an interlocutory injunction, or the refusal to dissolve it until the final hearing of the case, is not an abuse of his discretion and will not warrant a reversal of the order. Victor Talking Machine Co. v. Talk-o-phone Co. (C. C.) 146 Fed. 534; Victor Talk-

ing Machine Co. v. Leeds & Catlin Co., 148 Fed. 1022, 79 C. C. A. 536; Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U. S. 301, 311, 312, 29 Sup. Ct. 495, 53 L. Ed. 805.

. [6] Counsel for the appellants invites the court to consider and decide this entire case upon this appeal from the interlocutory order of the court as did the Supreme Court in Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 495, 20 Sup. Ct. 708, 44 L. Ed. 856. But this case is more nearly analogous to Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U. S. 301, 311, 312, 29 Sup. Ct. 495, 53 L. Ed. 805, in which the courts below and the Supreme Court refused to determine the question of infringement and reserved it until the final hearing of the case, with the remark:

"If we should yield to this invocation and attempt a final decision, it would be difficult to say whether it would be more unjust to petitioner or to respondent."

The complainant alleges that the machines of the defendants infringe its patented claims, the defendants deny the averment, affidavits, and other evidence have been introduced, not to determine this issue, but to determine whether or not there is such a probability that there is infringement and continuing damage that an injunction that had been standing four months should remain until the final hearing. The main issue is one of fact. The complainant has the right to a trial of that issue upon the production, hearing, and cross-examination of the witnesses against it according to the salutary and searching practice under the common law, according to the best method yet devised to elicit the truth, and it protests against the final decision of this question upon affidavits. The conclusion is that the ends of justice will be better and more certainly attained by reserving, and we do hereby reserve, our opinion upon this question of infringement until the affidavit stage of this case has passed and the court below has investigated and decided the issue at the final hearing in the light of the testimony of the witnesses after their cross-examination, of the other evidence that may be produced and the arguments of counsel thereon.

Let the order below be affirmed.